8    333
52   119
52   132
52   819

FREDERICK A. VAN DYKE *v.* JOHN W. STOUT, JAMES HOY, Jr., and others.

An act incorporating a Gas Company provided, that the Commissioners therein named should open books for subscription to the stock on three weeks public notice, and continue them open until the stock should be subscribed, or, at their discretion, close the same after they had remained open two days, and again open them on like public notice; the powers of the Commissioners to cease on the appointment of a Board of Directors; the directors, when appointed, to have power to open the books for further subscription, until $50,000 should be subscribed. That, as soon as conveniently might be after $15,000 should be subscribed, the Commissioners should convene the stockholders by like public notice, to choose directors; the stockholders to be allowed one vote for each share held in his or her name fourteen days before the election. Fifteen thousand dollars were subscribed on the 15th of December, 1849, and the Commissioners thereupon gave the requisite notice of a meeting of the stockholders on the 24th of January, 1850, for the election of directors. The act gave no authority to the Commissioners to apportion the stock if more was subscribed than the act allowed.

*Held,* That shares subscribed on that day could not be voted upon at that election.

*Held, further,* That an excess of shares subscribed on that day could not affect the right of one who had subscribed on the 15th of December, 1849, to vote on each share so subscribed by him; and that the Commissioners had no authority to apportion the shares so as to limit that right to any smaller number of shares.

A person having subscribed, on the 24th of January, 1850, a greater number of shares than remained open for subscription, the Commissioners, by an apportionment made by them, reduced, equally, the number of shares so subscribed, and an equal number of shares subscribed by the complainant on the 15th of December, 1849; and allowed the number of shares so apportioned to him who had subscribed on the 24th of January, 1850, to be voted upon, and refused to permit the complainant to vote on more than the reduced number of shares so apportioned to him. Whereupon the complainant refused to vote at all; and one of the Commissioners, and the person who had subscribed on the 24th of January, 1850, with three others, received the majority of the votes cast, and assumed to act as directors. An injunction restraining them from so acting was allowed; and, on answer and motion to dissolve, was retained.

The bill, exhibited April 13, 1850, states, that on the 1st of March, 1849, the Legislature of New Jersey passed an act entitled "An act to incorporate the New Brunswick Gas Light Company;" and that by the said act John W. Stout, George A. Vroom and James Hoy, Jr., were appointed Commissioners

for receiving subscriptions for $50,000, to constitute the capital stock of the Company, in shares of $20 each; the said Commissioners, or a majority of them, to open the books for that purpose at such times and in such place or places in New Jersey as they should designate by a public advertisement to be publicly inserted for at least three weeks in a public newspaper printed in the city of New Brunswick; and should continue the same open until the said capital stock should be subscribed, or, at their discretion, close the same after they had remained open two days, and again open the same at some other time or times, place or places, giving public notice thereof as aforesaid; the sum of 5 per cent. on each share so subscribed to be paid in specie, or in bills of banks which redeemed their bills in specie, by each subscriber, at the time of subscription, to the said Commissioners; each subscriber to be entitled to receive a certificate for such stock from the Commissioners; the amount so received by the Commissioners to be paid by them to the directors of said Company, to be appointed as in the said act afterwards directed; the powers of the Commissioners to cease and determine on the appointment of the Board of Directors; the said Board, when appointed, to have power, from time to time, to open the books for the further subscription of stock, until $50,000 should be subscribed.

That it is provided by the said act, that the management of the concerns of the Company should be vested in five directors, to be selected from the stockholders; and that the directors should choose a president from among themselves; and that, as soon as conveniently might be after $15,000 should have been subscribed, the said commissioners should convene the said stockholders by public notice, to be given as aforesaid, to choose the first Board of Directors, who should hold their office until the first Monday in May, 1850; and that all elections should be by ballot of the stockholders or their proxies, allowing one vote for each share which they have held in his, her or their name or names at least fourteen days before the time of voting.

That the said Commissioners, having given the notice aforesaid, opened, at the house of B. D. Stelle, in New Brunswick,

on the (fifteenth) day of December 1849, books of subscription &c.; and that the complainant subscribed for 1250 shares, and paid the 5 per cent. on each share so subscribed by him, and received from the said Commissioners a receipt therefor.

That the number of shares subscribed at that time, including those subscribed by the complainant, amounted to about 1600; and the said Commissioners thereupon gave notice, according to the said act, of a meeting of the stockholders, at the house of B. D. Stelle, in New Brunswick, on the 24th of January, 1850, for the purpose of choosing directors.

That, at the time and place so advertised, the Commissioners attended, and opened the books of subscription, and some subscriptions were made, amounting, as the complainant has been informed and believes, to 350 shares. And the Commissioners had fixed the hour of eleven in the forenoon, in their advertisement, as the hour when the election for directors should take place; and James Hoy, Jr., one of the Commissioners, shortly before the arrival of the said hour, said, in effect, that it was proper or necessary to close the book of subscription by a resolution, and then moved that the book of subscription be closed. That Joseph C. Potts, during this time, was sitting at the table on which the subscription book lay open, and, at or just before the time when said James Hoy, Jr., one of the Commissioners, moved to close the book of subscription, the said Joseph C. Potts subscribed, on said book, 1250 shares; and the complainant then offered to subscribe an additional number of shares; but this was objected to by the Commissioners, on the ground that the time fixed for closing the book had elapsed.

That the complainant did not perceive or learn that the Commissioners required or received from the said Joseph C. Potts 5 per cent. on each share so subscribed by him.

That the Commissioners, or one of them for himself and fellows, then declared that, as there was more stock subscribed than the charter called for, it was necessary to apportion the same; and thereupon they proceeded to make such apportionment by deducting from the subscriptions made by the complainant and the said Joseph C. Potts the whole of the excess. That

the complainant objected to the said proceedings of the Commissioners, and refused to receive from them the percentage on the shares so cast aside, as the whole proceeding was, in his judgment, a violation of the act of incorporation, a disregard of his rights, and contrary to equity and good conscience.

That the Commissioners then presented a list of the subscribers, with the number of shares or votes that each was entitled to, and, in making such list, the complainant was named as only entitled to 705 shares or votes, and not to 1250 shares or votes; and the Commissioners thereupon proceeded to the election of directors by the appointment of tellers to count the votes; and the complainant offered to vote 1250 shares or votes, but was told by the tellers that, agreeably to the list handed to them by the Commissioners, the complainant was entitled to only 705 shares or votes; and the complainant declined voting that number only, and presented to them a protest in writing, as follows: "I, Frederick A. Van Dyke, a subscriber (&c.,) having subscribed the number of shares annexed to my name, claim the right and privilege of voting the full number of shares, one vote for each share subscribed by me. I do most respectfully protest against the right and power of the Commissioners to apportion the stock subscribed in the manner in which the same was done, and thereby cut down the number of shares and the number of votes to which I am entitled. If there are more shares subscribed than the number provided for in the charter, I respectfully state it as my opinion, that an excess beyond the amount must be entirely rejected, leaving the subscribers the whole number of shares by them subscribed according to the priority of subscription."

That the said tellers, on counting the votes, declared that John Acken, Benjamin D. Stelle, David Bishop, George A. Vroom and Joseph C. Potts were elected directors of the said Company.

That the said persons so declared directors have issued proposals for building gas works, (setting out the proposals). And the said directors, as the complainant is informed and charges, intend to lay out and expend, not only all the money so paid by

the complainant and others, but what may be paid by the complainant and others on instalments that may hereafter be called in on the shares subscribed, in the manner set forth in such proposals, and in the purchase of land and buildings, contrary to the interest of the original subscribers, and in jeopardy of the whole capital stock.

The bill charges, that the Commissioners, or some of them, had an understanding with the said Potts, that the subscription book should be closed at 11 o'clock, at which time he was to have possession of the same and subscribe for such a number of shares as would give him a control in the selection of directors.

The bill prays, that the said directors, so appointed, may be directed to stay further proceedings until the further order of the Court; that the proceedings of the Commissioners be so far set aside as to restore the rights of the complainant; that the said election of directors be set aside, and the Commissioners be directed to hold an election for directors, upon the notice required by the charter, and at such election to receive the votes on the shares which were subscribed on the first opening of the subscription books, and such additional shares subsequently subscribed as would complete the number of shares contemplated by the act of incorporation, and to reject the excess from the shares subscribed by said Joseph C. Potts on the closing of the book of subscription; and for such further and other relief &c.

On the reading of the bill an injunction was allowed, restraining the directors so appointed from making or completing any contract which can or may lead to the expenditure of money, and if any contract has been made, from expending any further money on the same, and from doing any further act or thing which would involve the Company in expense.

Subpena was prayed against the said persons so appointed directors, and against the said Commissioners.

Acken, Bishop, Stelle and Potts, four of the persons so appointed directors, put in their joint and several answer.

They admit the act of incorporation as set forth in the bill. That books of subscription were opened by the Commissioners at the time stated in the bill; and that the complainant then subscribed for 1250 shares of the capital stock, and paid thereon 5 per cent., as required by the charter, and received a receipt for the same.

They admit that the Commissioners called a meeting of the stockholders for the purpose of electing the first Board of Directors; and that on that day Joseph C. Potts subscribed for 1250 shares of the stock. That the Commissioners made an apportionment of the stock, and allotted to the complainant and the said Potts 705 shares each; and that, at the election held that day, these defendants and George A. Vroom were elected directors.

They admit that they have issued proposals for building gas works; and say that they intend, in case they shall build such works, to expend so much of the money paid by the complainant and the other stockholders on the shares allotted to them, respectively, by the Commissioners, and of such instalments thereon as may be called in for that purpose, as will be required to purchase the necessary land and to erect the works contemplated by the act of incorporation.

The defendants Acken, Bishop and Stelle say, that they have no knowledge of what took place at the house of said Stelle on the day the election of said directors was held, except as they have hereinbefore admitted.

They deny all knowledge or information of an understanding between the said Joseph C. Potts and the Commissioners or any or either of them, that the subscription book should be closed at eleven o'clock, at which time the said Potts was to have possession of the same and subscribe for such a number of shares as would give him, the said Potts, the control of the election of directors, or of any other understanding between the Commissioners and the said Potts, or either of them, in relation to his taking any number of said shares, at any time or for any purpose.

The defendant Potts, answering for himself, says, that he procured the passage of the law to incorporate the said Company, from the Legislature; and very soon thereafter visited New Brunswick, and continued his visits there from time to time, endeavoring, by conference with gentlemen residing in that place, to beget an interest in the subject of lighting that city with gas; that he spent both time and money in producing a movement amongst the inhabitants of that place in favor of the project; and, having at length succeeded in enlisting a number of persons in favor of the plan, the Commissioners proceeded to give the notice required by the charter, and to open the books for the subscription of the capital stock, as set forth in the bill.

That this defendant was convinced that the success of the project depended very much upon the control and management of the works being in the hands of the capitalists and inhabitants of the said city; and that while he intended, from the first inception of the plan, to take some portion of the said stock as an investment, if any remained unsubscribed after all the residents of the place had made their subscriptions, he had no intention or desire to monopolize the stock, or seek through it to control the Company; and that, in conformity with this view, he did not attend at the opening of the books, nor on any subsequent day while they remained open, seek to subscribe for the stock, until the very last day on which they remained open, and until near the close of the last hour on that day.

He further says, that soon after Duncan White and the complainant, both residents of Philadelphia, made their subscription for stock, whereby they attempted to monopolize a large majority of the stock and secure the control of the Company in the hands of the complainant, this defendant heard that complaints of dissatisfaction were expressed by nearly all the citizens of New Brunswick who had subscribed, and by several who had intended to subscribe; all supposing that the complainant was associated with a company of contractors to build gas works, and that the object of his large subscription was, not merely for the purpose of legitimate investment, but for the purpose of obtaining undue control in the letting or contracting for the building

of the works. And some of the citizens of said city who had sub-scribed declared that they would forfeit what they had paid, but would pay no more; while some who had intended to subscribe, but had not, refused to do so. That, to prevent the failure of the project from this cause, he admits that he urged several friends of the project not to abandon it, but to go forward, take some stock, and await the result; and that several persons did so. And this defendant denies that he had any understanding with any person that he should take any number of shares, or that he should take enough to control the Company, or in any way in-terfere with its control. And he alleges that he did not take enough of the shares to control the Company, nor has he at any time controlled or attempted to control it.

The defendants Stout, Vroom and Hoy put in their joint and several answer.

They admit the act of incorporation, and that therein and thereby they were appointed Commissioners for receiving sub-scriptions (&c.)

They admit the opening of the books for subscription, on the 15th of December, 1849, and that the complainant subscribed for 1250 shares, and paid the percentage and received the Com-missioners' receipt for the same.

The defendants Vroom and Stout say, that, besides the com-plainant, other persons, on that day, subscribed for 500 shares of said stock, and paid 5 per cent on each share subscribed, partly in notes of specie paying banks, and a very considera-ble part thereof in checks on such banks; all of which were, on the same day, deposited as cash to the credit of these defendants, as Commissioners of said Company, in the State Bank at New Brunswick. That on that occasion one Duncan White subscribed for 100 shares of stock; that said White was an entire stranger to these defendants, and appeared to be known only by the complainant. That it was said, that the said White was a gentleman of fortune from Philadelphia, who had come to New Brunswick for the purpose of investing his money in the

stock of said Company; all which information these defendants believe came from the complainant.

That, 1500 shares of said stock having been subscribed, these defendants advertised, according (&c.,) that a meeting of stockholders would be held at Stelle's hotel, in New Brunswick, on the 24th of January then next, at 11 A. M., to choose the first Board of Directors. That on that day these defendants attended at the place mentioned, about 10 o'clock, A. M., and, in the presence of the persons there assembled, again publicly opened the books of subscription to the said stock. That thereupon subscriptions were soon after made by several persons, for 640 shares of said stock; on a large proportion of which 5 per cent. was paid to these defendants in checks on specie paying banks, and the residue in bank bills of such banks.

That, some time before the hour of 11 A. M., James Hoy, Jr., one of these defendants, remarked, that at the hour of 11 the books ought to be closed by a motion for that purpose, or, that it would be proper at that time that a motion should be made to close the books. That, some time afterwards, the said Hoy looked at his watch, and, remarking that it was 11 o'clock, moved that the books be closed. That these defendants decided that the time had arrived, and unanimously resolved to close the said books. That, a short time before 11 o'clock, but how long before these defendants cannot accurately state, Joseph C. Potts, who had been sitting at the table whereon the subscription book was lying the most of the time while the commissioners were together on the said morning, took the said book and made a subscription therein for 1250 shares of said stock, as these defendants afterwards, on examining said book, ascertained. That, soon after said Potts had so subscribed, the complainant took the book from the table, and, after examining it, requested of these defendants that he might be allowed to make a further subscription to the said stock. That these defendants informed the complainant that they had no power to receive further subscriptions, as the hour fixed in the advertisement for the election of directors had arrived, especially as there was already so much more stock subscribed than called for by the charter. That the

complainant then asked, as a matter of courtesy to him, that he might be permitted, or have the privilege to subscribe for more stock; and the said Potts stating that, in such case, he should claim the same privilege, these defendants announced their determination not to receive any further subscriptions, and desired the persons present to withdraw from the room while they determined upon the mode of apportioning the said stock.

That, there being 1090 shares of stock subscribed more than called for by the charter, and the charter making no provision for apportionment in such case, these defendants resolved to reduce rateably all subscriptions over 100 shares thereof, and did, accordingly, reduce rateably the stock so subscribed by the complainant and the said Potts as aforesaid, they being the only persons who had subscribed for more than 100 shares; and they allotted to the complainant and said Potts, each. 705 shares of said stock; and thereupon returned to said Potts 5 per cent. on each share so deducted from his original subscription, and tendered the same amount to the complainant, which he refused to receive.

That in making the said apportionment of the said stock they acted in good faith, according to the best of their judgment, and for what they believed to be the best interests of the said Company under the circumstances of the case.

That said Potts, at the time of making his said subscription, did not pay to these defendants 5 per cent. thereon, as required by the charter, but delivered to these defendants his check on one of the Trenton banks for the amount of said 5 per cent., which, together with other checks, and bank bills, that day paid to these defendants, on other stock subscribed for, was, on the same day, deposited in the State Bank at New Brunswick, as cash, to the credit of these defendants as Commissioners as aforesaid.

That the payment so made by said Potts was made openly and publicly, and the check so given by him was laid upon the table, with other checks and bank bills received by these defendants, open to the inspection of every body; that the complainant might have seen and examined them at his pleasure, and might have had full information thereof upon inquiring of either

of these defendants; and these defendants are entirely at a loss to know how the complainant can be ignorant that said Potts made the payment as aforesaid, as well from the publicity with which the payment was made, as from the fact that the complainant, who took exception to the doings of these defendants, did not charge these defendants with colluding with the said Potts to give him the control of the stock of the said Company.

That, after these defendants had apportioned the said stock as aforesaid, they appointed tellers or inspectors of the election for directors of said Company, and made out and furnished to them a list of the stockholders thereof, with the number of shares or votes to which each was entitled; in which the complainant was set down as entitled to 705 shares. That, at the election afterwards held, the persons named in the bill were elected directors. That, at said election, the complainant offered to vote on 1250 shares; and was told by the tellers that, according to the list furnished them, he was entitled to 705 votes, and no more. That the complainant thereupon declined voting at all, and presented to the inspectors the protest set forth in his bill of complaint. That no challenge or objection was made to any vote given at the said election; but all who voted on that day voted the whole number of shares set down opposite their names in the before mentioned list without challenge or question from any person.

These defendants deny that they, or either of them, had any understanding with said Potts that the book of subscription should be closed at 11 o'clock, at which time said Potts was to have possession of the same and subscribe for such a number of shares as would give him a control in the selection of directors of said Company, or that they, or either of them, had any understanding whatever in relation to closing the said books at any hour, or in relation to the books being put in the possession of said Potts for the purpose of subscribing for any number of shares of said stock. And these defendants admit that they knew several persons intended to subscribe for some shares of said stock during that morning; and they supposed that said

Potts would be one of the number of those who would so subscribe.

:Motion to dissolve the injunction.

*George A. Vroom* and *P. D. Vroom* in support of the motion. They cited 4 *Paige,* 246, 251; 3 *Meriv.* 173; 1 *John.* 18, 118; 1 *Edw. Ch.* 366; *Hopk. Ch.* 587; *Rev. Stat.* 146. sec. 7; *Saxt.* 287.

*J. S. Green* contra. He cited *Hopk. Ch.* 593; *Saxt. Ch.* 379; 2 *Green's Ch.* 78.

THE CHANCELLOR. The charter provides, that the Commissioners, or a majority of them, shall open books for subscription, at such times and places as they should designate by three weeks previous public notice in a newspaper, and continue the same open until the stock should be subscribed, or, at their discretion, close the same after they have remained open two days, and again open the same at some other time and place, giving public notice thereof as aforesaid; 5 per cent. on each share subscribed to be paid in specie or in bills of banks which redeem their bills in specie, at the time of subscription; the powers of the Commissioners to cease on the appointment of the board of directors; the said board, when appointed, to have power, from time to time, to open the books for further subscription, until the whole stock, $50,000, should be subscribed. That, as soon as conveniently might be after $15,000 should be subscribed, the Commissioners should convene the stockholders, by public notice to be given as aforesaid, to choose the first board of directors; the stockholders to be allowed one vote for each share which they have held in his or her name at least fourteen days before the time of voting.

The Commissioners opened the books for subscription on the 15th of December, 1849, having given the public notice required; and 1600 shares were subscribed on that day; of which number the complainant subscribed 1250.

The Commissioners, thereupon, gave the public notice required by the act of a meeting of the stockholders, to be held on the 24th of January, 1850, at New Brunswick, for the purpose of choosing directors, fixing, in the notice, the hour of 11 in the forenoon as the time when the election for directors should take place.

On that day, the Commissioners, without having given any second notice of the opening of the books for subscription, opened them for that purpose, at about 10 o'clock, and several subscriptions were made, amounting to 350 shares; and just before the hour of 11, one of the Commissioners said it would be proper to close the subscription book by resolution, and made a motion to that effect; and at or just before the making of this motion, Joseph C. Potts, who was then, and had been for some time, sitting at the table on which the subscription book lay open, subscribed 1250 shares. The complainant then offered to make an additional subscription for shares, but the Commissioners declined permitting him to do so, on the ground that the time fixed for closing the book had elapsed. The Commissioners accepted Potts's check on a bank in Trenton for the 5 per cent. on each of the 1250 shares so subscribed by him.

Including the subscription so made by Potts, there was more stock subscribed for than the act of incorporation allowed; and the Commissioners made an apportionment of the stock, by deducting from the subscriptions made by the complainant and Potts the whole of the excess over the number of shares allowed by the act; allowing to the complainant and Potts, each, 705 shares and votes. The complainant protested against this proceeding, and claimed to be entitled to 1250 shares, and as many votes in the election for directors. This claim was denied him; and he refused to vote on 705 shares only, and refused to receive back from the Commissioners the percentage he had paid them on the shares on which they refused to allow him to vote. At the election so held, Potts's vote on 705 shares of the 1250 so subscribed by him was taken; and one of the Commissioners, and the said Potts, and three others were elected Directors; and the persons so elected have issued proposals for the building of gas works.

23

No authority is given to the Commissioners by the charter to make an apportionment of stock, if more than the whole number of shares be subscribed.

It appears to me, that the persons claiming to have been thus elected directors, cannot, consistently with the provisions of the act of incorporation, be recognized as such by this Court; and that they ought not to be permitted to proceed in the construction of the works contemplated by the act, and the expenditure of the money of the stockholders; and that, therefore, the injunction should be retained.

I am of opinion, first, that the book for subscriptions for stock cannot be considered to have remained open for subscription from December 15, 1849, to January 24, 1850. More than $15,000 had been subscribed on the day first mentioned, the day fixed by the public notice for opening the books; and the Commissioners, thereupon, gave the required public notice of a meeting of the stockholders for the choice of directors. The obvious meaning of the act, I think, is, that if, on $15,000 being subscribed, the Commissioners give notice of a meeting of the stockholders for the election of directors, it is a notice to those who had become stockholders, by thus subscribing the $15,000 or more, that the election for directors is to be made by them; and the stock subscription book must, it appears to me, be considered as closed on the giving of that notice. If this be so, then the books were improperly opened for subscription on the 24th of January, 1850; for no public notice had been given that the books would be open for subscription on that day.

But, secondly, if the books for subscription could be considered as properly open for subscription on the 24th of January, 1850, it is clear that the Commissioners could not lawfully receive votes for directors on shares subscribed that day; the act expressly declaring, that the stockholder must have held his shares fourteen days previous to the election to enable him to vote on them.

Again, I am of opinion, that, if shares subscribed on that day could be voted upon, yet, that an excess of shares subscribed that day, beyond the number of shares remaining open for sub-

scription by the terms of the charter, could not affect the right of the complainant to vote on each and every share so previously subscribed by him; and that the Commissioners had no authority to make any apportionment of shares which would limit the complainant's right to vote to any smaller number of shares. If shares subscribed that day could be voted upon at all, the plain course of the Commissioners was, to have reduced the shares and votes of Mr. Potts to the number remaining open for subscription, by the terms of the act, when he made his subscription.

I think the nature of the wrong done to the complainant such as to call for the interposition of the Court, to restrain the persons who were declared directors because they received a majority of the votes cast, at an election for directors conducted on the principles adopted by the Commissioners in this case, from proceeding with the works contemplated by the act.

Motion denied.